GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. State Bar No. 186783)
SHAWN J. NELSON (Cal. State Bar No. 185149)
Assistant United States Attorneys
Violent and Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8603/5339
    Facsimile: (213) 894-3713
    E-mail:    John.Lulejian@usdoj.gov
               Shawn.Nelson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>        v.<br><br>CHARLES LEROY TWYMAN,<br>   et al.,<br><br>          Defendants. | CR No. 07-1142-VBF |
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>        v.<br><br>ANTHONY DEWAYNE TWYMAN,<br><br>          Defendant. | CR No. 07-1162-VBF<br><br>GOVERNMENT'S POSITION RE: PRESENTENCE REPORT AND SENTENCING FACTORS FOR DEFENDANT ANTHONY DEWAYNE TWYMAN<br><br>DATE:  November 9, 2009<br>TIME:  11:00 a.m.<br>PLACE: Courtroom of the Hon.<br>       Valerie Baker Fairbank |

1    Plaintiff, United States of America, through its attorney of

2  record, the United States Attorney's Office for the Central

3  District of California, hereby files the Government's Position

4  re:  Presentence Report and Sentencing Factors for Defendant

5  Anthony Dewayne Twyman.  The government's position is based upon

6  the concurrently-filed memorandum of

7  points and authorities, the files and records of this case, the

8  Presentence Report, and any evidence or argument presented at the

9  hearing in this matter.

10
   Date: October 28, 2009     GEORGE S. CARDONA
11                            Acting United States Attorney

12                            CHRISTINE C. EWELL
                              Assistant United States Attorney
13                            Chief, Criminal Division

14
                              /s John J. Lulejian
15                            JOHN J. LULEJIAN
                              SHAWN J. NELSON
16                            Assistant United States Attorneys
                              Violent & Organized Crime Section
17
                              Attorneys for Plaintiff
18                            UNITED STATES OF AMERICA

19

20

21

22

23

24

25

26

27

28

2

TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . ii

I     INTRODUCTION . . . . . . . . . . . . . . . . . . . . 1

II    FACTS . . . . . . . . . . . . . . . . . . . . . . . 2

III   FACTUAL CORRECTIONS TO PRESENTENCE REPORT . . . . . . . 3

IV    SENTENCING RECOMMENDATION . . . . . . . . . . . . . 3

      A.   Legal Standard . . . . . . . . . . . . . . . . . 3

      B.   Government's Recommendation . . . . . . . . . . . 5

           1.   Sentencing Guideline Calculation . . . . . . . 6

           2.   Section 3553(a) Factors . . . . . . . . . . . 7

                a.   Nature and Circumstances of the
                     Offense and History and Characteristics
                     of Defendant . . . . . . . . . . . . . . 7

                b.   Need to Reflect the Seriousness of the
                     Offense . . . . . . . . . . . . . . . . . 9

                c.   Deterrence of Criminal Conduct . . . . . . 9

                d.   Need to Protect the Public . . . . . . . . 9

                e.   Need to Provide Defendant with
                     Education . . . . . . . . . . . . . . . . 9

                f.   Need to Avoid Unwarranted Disparity in
                     Sentences . . . . . . . . . . . . . . . 10

           3.   Other Factors . . . . . . . . . . . . . . . 11

      C.   Probation Office's Recommendation . . . . . . . . 13

V     WAIVER OF APPEAL . . . . . . . . . . . . . . . . . . 15

VI    CONCLUSION . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

FEDERAL CASES                                                    PAGE(S)

Ellis v. United States Dist. Ct. for W.D. Wash.,
      356 F.3d 11986 (9th Cir. 2004)  . . . . . . . . . . . . . 4

In re Morgan,
      506 F.3d 705 (9th Cir. 2007) . . . . . . . . . . . 4, 5, 15

United States v. Bride,
      2008 WL 2782688 (W.D. Wash. Jul. 14, 2008),
      aff'd, 581 F.3d 888 (9th Cir. 2009)  . . . . . . . . . . . 5

United States v. Cieslowski,
      410 F.3d 353 (7th Cir. 2005)  . . . . . . . . . 4, 5, 13

United States v. Garcia,
      522 F.3d 855 (9th Cir. 2008)  . . . . . . . . . . . . 4, 5

United States v. Guerrero-Velasquez,
      434 F.3d 1193 (9th Cir. 2006) . . . . . . . . . . . . . 10

United States v. Hunt,
      459 F.3d 1180 (11th Cir. 2006) . . . . . . . . . . . . 10

United States v. Miller,
      722 F.2d 562(9th Cir. 1983)  . . . . . . . . . . . . . 14

United States v. Pacheco-Navarrette,
      432 F.3d 967 (9th Cir. 2005) . . . . . . . . . . . . . . 5

United States v. Samueli,
      575 F. Supp. 2d 1154 (C.D. Cal. 2008),
      dismissing appeal, ___ F.3d ____,
      2009 WL 3030381 (9th Cir. Sept. 24, 2009)  . . . . 4, 6, 14

United States v. Smith,
      445 F.3d 1 (1st Cir. 2006) . . . . . . . . . . . . . . 10

United States v. Wilson,
      350 F. Supp. 2d 910 (D. Utah 2005) . . . . . . . . . . 10

FEDERAL STATUTES

18 U.S.C. § 3553(a)(2)  . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 3553(a)(6)  . . . . . . . . . . . . . . . . . 10

TABLE OF AUTHORITIES (Cont'd)

FEDERAL RULES                                                    PAGE(S)

Fed. R. Crim. P. 11(c)(1)(C)  . . . . . . . . . . . . . . *passim*

Fed. R. Crim. P. 11(c)(3)(A)  . . . . . . . . . . . . . . . . 4


UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 4A1.3 . . . . . . . . . . . . . . . . . . . . . 14

U.S.S.G. § 5A (2009) . . . . . . . . . . . . . . . . . . . 6

iii

**I**

**INTRODUCTION**

Defendant Anthony Dewayne Twyman ("Anthony Twyman") is before the Court for sentencing after pleading guilty to counts eight and nine of the Indictment in <u>United States v. Charles Leroy Twyman, et al.</u>, Case No. CR No. 07-1142-VBF, each of which charges Use of a Communication Facility in Committing a Felony Drug Offense, in violation of Title 21, United States Code, Section 843(b), and to the single-count Indictment in <u>United States v. Anthony Dewayne Twyman</u>, Case CR No. 07-1162-VBF, which charges being a Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1).[1]

After lengthy negotiations with Anthony Twyman, Charles Leroy Twyman, and Michael Lynn Twyman (collectively, "the Twyman brothers"), Anthony Twyman pleaded guilty to a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  In that plea agreement, the parties agreed that the appropriate sentence for both of these cases is 156 months imprisonment.[2]

---

[1]    The statutory maximum sentence that the Court can impose for each violation of Title 21, United States Code, Section 843(b), is 4 years imprisonment, a 3-year period of supervised release, a fine of up to $250,000, and a mandatory special assessment of $100.  The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 922(g)(1), is 10 years imprisonment, a 3-year period of supervised release, a fine of up to $250,000, and a mandatory special assessment of $100.

[2]    The 156-month sentence mathematically represents the statutory maximum for two counts of Use of a Communication Facility in Committing a Felony Drug Offense (96 months) and half the statutory maximum for the Felon in Possession of Firearms and Ammunition count (60 months).

1

## II

### FACTS[3]

On March 8, 2006, Anthony Twyman communicated with his brother, Charles Leroy Twyman over the telephone.  (PSR ¶ 16.) During this telephone communication, Anthony Twyman and Charles Leroy Twyman discussed, in coded language, Anthony Quin Wheeler's payment to Charles Leroy Twyman for 114 grams of cocaine base, in the form of crack cocaine ("crack cocaine"), that had been manufactured by Gerald Plaze Thomas ("Thomas").  (PSR ¶ 16.)

On March 20, 2006, Anthony Twyman again used a telephone to communicate with Charles Leroy Twyman.  (PSR ¶ 17.)  During this telephone communication, the brothers discussed, in coded language, the 148 grams of crack cocaine that Thomas had delivered to another brother, Michael Lynn Twyman on March 10, 2006.  (PSR ¶ 17.)

At all relevant times, Anthony Twyman understood that he, Charles Leroy Twyman, Michael Lynn Twyman, Gerald Plaze Thomas, and Anthony Quin Wheeler were conspiring to manufacture, possess with intent to distribute, and distribute crack cocaine and the telephone calls related to that conspiracy.  (PSR ¶ 18.)

On July 27, 2006, during the execution of a lawful search warrant at Anthony Twyman's residence, law enforcement found and seized the three firearms:  (1) Sig-Sauer P229, 40-caliber semiautomatic pistol; (2) Colt Python .357 magnum revolver; (3) Wesson Arms .357 magnum revolver.  (PSR ¶ 19.)  In addition,

---

[3]   Except as otherwise noted, pursuant to Rule 32(i)(3)(A), the government respectfully requests the Court accept the "undisputed portion[s] of the presentence report as a finding of fact."

1  law enforcement found and seized 60 rounds of Remington-Peter

2  .357 magnum ammunition and 6 rounds of Winchester Western .38

3  special ammunition.[4]  (PSR ¶ 19.)  Further, at the time Anthony

4  Twyman possessed the firearms and ammunition, he had been

5  convicted of four felonies.[5]  (PSR ¶ 21.)

### III

### FACTUAL CORRECTIONS TO PRESENTENCE REPORT

8       The government does not have any factual corrections to the

9  Presentence Report.

### IV

### SENTENCING RECOMMENDATION

12 **A.   Legal Standard**

13      When the government and a defendant enter into a plea

14 agreement where the government "agree[s] that a specific sentence

15 or sentencing range" should apply, that plea is governed by

16 Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  If

17 the plea agreement is governed by Rule 11(c)(1)(C), the court has

---

19      [4]  All of the above firearms and ammunition had been
manufactured outside of the State of California and had been
shipped or transported in interstate and/or foreign commerce.
20 (PSR ¶ 20.)

21      [5]  Anthony Twyman's convictions include the following
felonies: (1) Burglary, Second Degree, in violation of Section
22 459 of the California Penal Code, in the Superior Court of
California, County of Orange, Case Number C-50491, on or about
23 April 18, 1983; (2) Possession for Sale of Cocaine Base, in
violation of Section 11351.5 of the California Health and Safety
24 Code, in the Superior Court of California, County of Los Angeles,
Case Number A983290, on or about October 11, 1989; (3) Convicted
25 Person Having Concealed Firearm in Vehicle, in violation of
Section 12025(a) of the California Penal Code, in the Superior
26 Court of California, County of Los Angeles, Case Number BA018630,
on or about December 17, 1990; and (4) Sale/Transportation/Offer
27 to Sell a Controlled Substance, in violation of Section 11352(a)
of the California Health & Safety Code, in the Superior Court of
28 California, County of Los Angeles, Case Number BA130433, on or
about July 17, 1996.  (PSR ¶ 21.)

1   three options:  "the court may accept the agreement, reject it,

2   or defer a decision until the court has reviewed the presentence

3   report."  Fed. R. Crim. P. 11(c)(3)(A); see Ellis v. United

4   States Dist. Ct. for W.D. Wash., 356 F.3d 1198, 1206 (9th

5   Cir. 2004) (en banc).  "Although the court is free to accept or

6   reject the plea agreement, it may not do so on a piecemeal basis,

7   and the Rule 11(c)(1)(C) stipulated sentence is binding upon the

8   court's acceptance of the plea agreement."  United States v.

9   Samueli, 575 F. Supp. 2d 1154, 1158 (C.D. Cal. 2008) (quoting In

10  re Morgan, 506 F.3d 705, 709 (9th Cir. 2007)), dismissing appeal,

11  ___ F.3d ____, 2009 WL 3030381 (9th Cir. Sept. 24, 2009).

12  Further,

13

14      [w]hen presented with a Rule 11(c)(1)(C) plea
        agreement, it is not only permitted but expected that
        the court will take an active role in evaluating the
15      agreement.  As the district court traditionally
        exercises broad discretion over all aspects of criminal
16      sentencing, whether to accept or reject a plea
        agreement containing a stipulated sentence is likewise
17      left to the sound discretion of the court.

18  Id. (quotations and citations omitted).

19      In evaluating a Rule 11(c)(1)(C) plea agreement, a court's

20  guiding principle must be "the interest of justice."  Id.  Thus,

21  a court may consider a number of factors including those

22  enumerated in Title 18, United States Code, Section 3553(a).  See

23  United States v. Garcia, 522 F.3d 855, 858 n.3 (9th Cir. 2008)

24  (noting that district court considered Section 3553(a) factors in

25  justifying stipulated sentence).  A court also may consider the

26  United States Sentencing Guidelines ("Sentencing Guidelines") and

27  use them to justify its sentence.  See United States v.

28  Cieslowski, 410 F.3d 353, 364 (7th Cir. 2005) ("[T]he court can

4

1  and should consult the Guidelines in deciding whether to accept

2  the plea."). Cf. Garcia, 522 F.3d at 858 n.2 ("During

3  sentencing, the district court acknowledged that its guidelines

4  calculations 'appear[ed] academic because [the court] was going

5  to accept the 11(c)(1)(C) plea agreement.'"). However, while

6  there is a nexus between the Sentencing Guidelines and the plea,

7  see United States v. Bride, 2008 WL 2782688, *2 (W.D. Wash.

8  Jul. 14, 2008), aff'd, 581 F.3d 888 (9th Cir. 2009), "[a]

9  sentence imposed under a Rule 11(c)(1)(C) plea arises directly

10 from the agreement itself, not from the Guidelines. As Booker is

11 concerned with sentencing arising under the Guidelines, it is

12 inapplicable in this situation." Cieslowski, 410 F.3d at 364.

13 In other words, Rule 11(c)(1)(C) plea agreements are not based on

14 the Sentencing Guidelines and need not comport with them.

15 See United States v. Pacheco-Navarrette, 432 F.3d 967, 971 (9th

16 Cir. 2005).

17 **B.    Government's Recommendation**

18     The plea agreement before the Court is the result of a

19 substantial investment of time and effort by the government.  The

20 government repeatedly met with counsel for the Twyman brothers

21 and negotiated plea agreements that held each brother accountable

22 for his criminal conduct and were fair and just.  When it

23 prepared the plea agreements, the government first determined the

24 applicable Sentencing Guidelines ranges and analyzed the Section

25 3553(a) factors, knowing that neither were controlling.  The

26 government then conducted "an individualized analysis of the

27 specific facts presented by the case . . . ." Morgan, 506 F.3d

28 at 711 n.3.  After completing these analyses and discussing the

1  cases with defense counsel, the government prepared individual

2  plea agreements and presented them to the Twyman brothers.

3      Based on its analysis of the facts of this specific case,

4  the government believes that Anthony Twyman's plea agreement is

5  "in the interest of justice" and "complies with and advances the

6  purpose of criminal sentencing as expressed by Congress."

7  Samueli, 575 F. Supp. 2d at 1158-59.

8      **1.   Sentencing Guideline Calculation**

9      The government concurs with the offense level calculation in

10 the PSR, which calculates a total offense level of 30.  (PSR

11 ¶¶ 25-50.)  The government also concurs with the Probation

12 Office's conclusion that a role adjustment is not appropriate.

13 (PSR ¶ 32.)  By participating in a conspiracy to traffic crack

14 cocaine, Anthony Twyman played a role that forecloses any

15 assertion that he had a minor or mitigating role.  However,

16 because Anthony Twyman's conduct did not rise to the level of an

17 organizer, leader, manager, or supervisor of others in the

18 offense, the government submits that an upward role adjustment is

19 not appropriate.

20     The government concurs with the criminal history calculation

21 provided in the PSR, which places Anthony Twyman in criminal

22 history category II.  (PSR ¶¶ 52-64.)

23     Based on an offense level of 30 and criminal history

24 category of II, Anthony Twyman's advisory Sentencing Guidelines

25 range is 108 to 135 months imprisonment.  See U.S.S.G.

26 § 5A (2009).

27

28

1       **2.    Section 3553(a) Factors**

2           **a.   Nature and Circumstances of the Offense and**
               **History and Characteristics of Defendant**
3

4           As detailed above and in the PSR, Anthony Twyman was

5       involved in the distribution of approximately 252 grams of crack

6       cocaine.  By doing so, Anthony Twyman participated in a

7       conspiracy that trafficking in one of the most dangerous drugs

8       available today.  In addition to helping traffic drugs, Anthony

9       Twyman, a 4-time convicted felon, also illegally possessed 3

10      firearms and 66 rounds of ammunition.  There is no question that

11      guns and drugs are a dangerous combination.  However, this

12      combination in the hands of a convicted drug trafficker and

13      repeat felon is especially alarming.

14          As described in the PSR, Anthony Twyman has had interactions

15      with law enforcement since he was 16 years old.  Those

16      interactions have resulted in four convictions:

17          (1) On or about November 29, 1982, the Superior Court of

18      California, County of Orange, convicted Anthony Twyman of

19      Burglary, Second Degree, in violation of Section 459 of the

20      California Penal Code, and sentenced him to 3 years probation and

21      180 days in county jail (PSR ¶ 55);[6]

22          (2)  On October 11, 1989, the Superior Court of California,

23      County of Los Angeles ("Los Angeles Superior Court"),convicted

24      Anthony Twyman of Possession for Sale of Cocaine Base, in

25      violation of Section 11351.5 of the California Health and Safety

26      Code, and sentenced him to 3 years probation and 365 days in

27

28          [6]   Although the date in the plea agreement is listed as
        April 18, 1983, and the date in the PSR is November 29, 1982, it
        is the same conviction.

                                    7

county jail (PSR ¶ 56);

(3)   On December 17, 1990, the Los Angeles Superior Court convicted Anthony Twyman of a Convicted Person Having Concealed Firearm in Vehicle, in violation of Section 12025(a) of the California Penal Code, and sentenced him to 3 years probation and 45 days in county jail (PSR ¶ 57); and

(4)   On July 17, 1996, the Los Angeles Superior Court convicted Anthony Twyman of Sale/Transportation/Offer to Sell a Controlled Substance, in violation of Section 11352(a) of the California Health & Safety Code, and sentenced him to 3 years probation and 2 days in county jail.  (PSR ¶ 58.)

Because of the age of the convictions, only the 1996 conviction is used to calculate Anthony Twyman's criminal history.  Nonetheless, the Court should consider his other convictions and criminal conduct to determine whether to accept the Rule 11(c)(1)(C) plea agreement.

What is troubling about Anthony Twyman's criminal history is that he has not learned from his mistakes.  Even though he has twice been convicted of drug-trafficking crimes (one of which involved crack cocaine), he continues to traffic in dangerous drugs.  Also, even though he has been convicted of illegally possessing a firearm and is barred from doing so because of his prior felonies, he continues to illegally possess firearms and ammunition.  In other words, Anthony Twyman is before this Court for essentially the same conduct for which he previously was convicted.

Given the above convictions and more than 20-years of interactions with law enforcement enumerated in the PSR, a

sentence of 156 months imprisonment is appropriate.  An 156-month sentence also reflects the nature and circumstances of the offense and the history and characteristics of Anthony Twyman.

### b.   Need to Reflect the Seriousness of the Offense

Participating in trafficking of approximately 262 grams of crack cocaine and the possession of firearms and ammunition by a felon are serious offenses.  Thus, a sentence of 156 months imprisonment reflects the seriousness of the offense.

### c.   Deterrence of Criminal Conduct

As detailed above and in the PSR, Anthony Twyman has been convicted of four felonies, but has served next to no time in jail.  Even though he has twice been convicted of trafficking drugs and has once been convicted of illegally possessing a firearm, the longest term of imprisonment he received was 365 days in county jail.  It is no wonder that these brief periods of incarceration did not deter his continued criminal conduct.  The government hopes that a sentence of 156 months will adequately deter Anthony Twyman and others from future criminal conduct.

### d.   Need to Protect the Public

The public needs to be protected from convicted felons, like Anthony Twyman, who traffic in crack cocaine and illegally possess firearms and ammunition.  A sentence of 156 months imprisonment will protect the public and deter Anthony Twyman from future criminal conduct.

### e.   Need to Provide Defendant with Education

The need to provide a defendant with education and vocational skills, while important in most contexts, must be placed in a subordinate position to the important considerations

of deterrence, protection of the public and the need for the sentence to reflect the seriousness of the offense.  See <u>United States v. Wilson</u>, 350 F. Supp. 2d 910, 921-22 (D. Utah 2005) (noting that legislative history of Sentencing Reform Act demonstrates that Congress intended to place rehabilitation as secondary consideration where serious crimes involved).  Anthony Twyman will have access to many programs in the prison system to which he can avail himself.  Neither the presence nor absence of any further educational programs should weigh heavily in this Court's sentencing determination.

                  **f.**   **<u>Need to Avoid Unwarranted Disparity in Sentences</u>**

Finally, a sentence in accordance with the Sentencing Guidelines also properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Numerous courts have recognized that the guidelines range serves as a bulwark against sentencing disparity.  <u>See</u> <u>United States v. Guerrero-Velasquez</u>, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country"); <u>United States v. Hunt</u>, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants.") (quoting 18 U.S.C. § 3553(a)(6)); <u>United States v. Smith</u>, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity).

In this case, a sentence of 156 months of imprisonment is fair and reasonable.  As set forth above, the sentence that was negotiated at arms-length by the parties.  Based on his role in trafficking drugs, the government agreed to let Anthony Twyman plead to two counts of Use of a Communication Facility in Committing a Felony Drug Offense, rather than require that he plead to the conspiracy charge.  In fact, the government allowed three other similarly situated defendants (Michael Lynn Twyman, Gerald Plaze Thomas, and Anthony Quin Wheeler) to plead to counts of Use of a Communication Facility in Committing a Felony Drug Offense.[7]  This ensures that there will be no disparity between Anthony Twyman's sentence and that of any similarly situated defendant, with respect to the drug-related charges.

### 3.   Other Factors

The government recognizes that 156-month sentence is greater than the applicable advisory Sentencing Guidelines range.  The government believes this sentence is appropriate for a number of reasons.

First, the plea agreement allows Anthony Twyman to plead guilty to drug charges that do not carry mandatory minimum

---

[7]     The Court has sentenced two of these defendants at or near the top of the applicable Sentencing Guidelines range. Anthony Quin Wheeler pleaded guilty to one count of Use of a Communication Facility in Committing a Felony Drug Offense.  On May 1, 2009, this Court sentenced him to a 42-month term of imprisonment.  Gerald Plaze Thomas pleaded guilty to two counts of Use of a Communication Facility in Committing a Felony Drug Offense.  On February 18, 2009, this Court sentenced him to a 96-month term of imprisonment.

Michael Lynn Twyman has pleaded guilty to two counts of Use of a Communication Facility in Committing a Felony Drug Offense, pursuant to a binding Rule 11(c)(1)(C) plea agreement.  If the Court accepts his plea agreement, he will receive a 96-month sentence.

1  sentences.   Count 1 of the Indictment (Case No. CR 07-1049-VBF)

2  alleges a conspiracy to manufacture, possess with intent to

3  distribute, and to distribute approximately 262 grams of cocaine

4  base.   This charge carries a 10-year mandatory term of

5  imprisonment.   However, because Anthony Twyman has two prior

6  felony drug convictions (the state 1989 and 1996), he would have

7  faced either a 20-year or mandatory life sentence if the

8  government filed one or more of the Section 851 enhancements.

9  When Anthony Twyman's potential 20-year or life sentences is

10 compared to the 156-month sentence in the plea agreement, there

11 is no question that the negotiated sentence is reasonable.

12      Second, the government is deeply concerned about convicted

13 drug traffickers possessing firearms.   As set forth above,

14 despite being convicted in the state for illegally possessing a

15 firearm, Anthony Twyman continued to possess firearms and

16 ammunition.   This fact distinguishes Anthony Twyman from other

17 defendants who pleaded to Use of a Communication Facility in

18 Committing a Felony Drug Offense.   Therefore, the government

19 believes that Anthony Twyman must be held accountable for the

20 firearms violation.   An additional five-year sentence

21 accomplishes this goal.

22      Finally, the government crafted a sentence for Anthony

23 Twyman that was congruent with the sentences that his brothers

24 would receive.   Through negotiations with counsel, the government

25 determined that Anthony Twyman's conduct was more egregious than

26 Michael Lynn Twyman's conduct, but less egregious than Charles

27 Leroy Twyman's conduct.   Accordingly, Anthony Twyman's 156-month

28 sentence is between the sentences his two brothers may expect to

1  receive.

2  **C.   <u>Probation Office's Recommendation</u>**

3       In its recommendation letter, the Probation Office

4  recommends "[a] sentence at the mid-point of the guideline range,

5  namely 122 months . . . ." (Letter of Brandi Foy to Court, dated

6  11/9/09 (Docket No. 182) ("USPO Rec. Letter"), at 4.)   The

7  Probation Office appears to agree that Anthony Twyman should

8  receive 48-months for each count of Use of a Communication

9  Facility in Committing a Felony Drug Offense.  (<u>Id.</u> at 1.)

10  However, the Probation Office disagrees that Anthony Twyman

11  should receive a 60-month consecutive sentence for the firearms

12  violation - instead arguing that 26 months is appropriate for

13  that count.  (<u>Id.</u>)  The Probation Office claims that its

14  recommended 122-month sentence "would be sufficient, but not

15  grater than necessary to comply with the purposes set forth in

16  18 U.S.C. § 3553(a)(2)."  (<u>Id.</u>)

17       The government disagrees with the Probation Office's

18  recommendation, and respectfully requests that the Court reject

19  it for the following reasons.

20       First, the Probation Office's recommendation appears to be

21  tied almost entirely to the Sentencing Guidelines and the Section

22  3553(a) factors.  While both are a acceptable starting places,

23  neither controls, because "[a] sentence imposed under a Rule

24  11(c)(1)(C) plea arises directly from the agreement itself, <u>not</u>

25  <u>from the Guidelines</u>." <u>Cieslowski</u>, 410 F.3d at 364 (emphasis

26  added).  The Probation Office's mechanical reliance on the

27  Sentencing Guidelines and Section 3553(a) factors in the context

28  of a Rule 11(c)(1)(C) plea ignores other factors that the Court

must consider when evaluating the plea to determine whether it "in the interest of justice" and "complies with and advances the purpose of criminal sentencing as expressed by Congress." Samueli, 575 F. Supp. 2d at 1158-59.

Second, the Probation Office did not consider the charging decisions made by the government.  See United States v. Miller, 722 F.2d 562, 564 (9th Cir. 1983) ("When a prosecutors selects a charge, he has made an executive choice.  When a judge sentences a defendant, he has made a judicial choice.  When a plea bargain is placed before a court, the necessary interplay between the charging and sentencing decisions becomes manifest.").  As set forth above, the government did not require Anthony Twyman to plead guilty to the conspiracy charge.  Nor did the government file any Section 851 enhancements.  Had the government done both of these things, Anthony Tywman would have been subjected to a prison term far greater than 156 months.  In that context, the negotiated sentence is reasonable.

Third, the Probation Office appears to treat Anthony Twyman's criminal history lightly:  "[t]he Probation Officer does not believe the criminal history discussed above warrants an upward departure pursuant to U.S.S.G. §4A1.3 . . . ."  (USPO Rec. Letter, at 4.)  In addition to improperly relying on the Sentencing Guidelines, the Probation Office all but ignores the fact that Anthony Twyman has been convicted twice of drug-trafficking crimes (one of which involved crack cocaine) and convicted once of illegally possessing a firearm.  The Probation Office also appears to downplay the fact that Anthony Twyman possessed the firearms and ammunition during the same period

14

during which he was helping his brothers traffic crack cocaine.

Fourth, the Probation Office did not give any weight to the fact that both Anthony Twyman and the government agreed to the 156-month sentence. The fact that the Probation Office feels that the agreed upon sentence does not "warrant[] an upward departure" is not relevant. What is relevant is that the parties had a meeting of the minds and reached a negotiated agreement that both parties believed was fair and just. While the parties' meeting of the minds in now way replaces the careful analysis of the plea agreement by the Court, the negotiations between the parties cannot be ignored.

Finally, when it asks the Court to sentence Anthony Twyman below 156 months, the Probation Office asks the Court to accept the plea agreement on a piecemeal basis. This request is not proper. See Morgan, 5056 F.3d at 709 ("Although the Court is free to accept or reject the plea agreement, it may not do so on a piecemeal basis, and the Rule 11(c)(1)(C) stipulated sentence is binding upon the court's acceptance of the plea agreement.") Therefore, rather than reject the plea agreement, the government respectfully requests that the Court accept the Rule 11(c)(1)(C) plea and sentence Anthony Twyman pursuant to the terms of that plea agreement.

## V

### WAIVER OF APPEAL

In his plea agreement, Anthony Twyman waived his right to appeal this sentence, if the sentence is within the statutory maximum and is constitutional, and the Court imposes the sentence agreed to by the parties. (Plea Agreement ¶ 19.) Accordingly, if

the Court chooses to advise Anthony Twyman of his limited

appellate rights, the government respectfully requests that the

Court note on the record that Anthony Twyman has waived most of

his appellate rights.

**VI**

**CONCLUSION**

For the reasons set forth above, the government respectfully

requests that the Court accept the plea agreement sentence

Anthony Twyman to a term of imprisonment of 156 months, a 3-year

term of supervised release, no fine, and a $300 special

assessment.


Dated: October 28, 2009   Respectfully submitted,

                          GEORGE S. CARDONA
                          Acting United States Attorney

                          CHRISTINE C. EWELL
                          Assistant United States Attorney
                          Chief, Criminal Division


                          /s John J. Lulejian
                          JOHN J. LULEJIAN
                          SHAWN J. NELSON
                          Assistant United States Attorney
                          Violent & Organized Crime Section

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

16

CERTIFICATE OF SERVICE

I, **RAQUEL MORAN**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**GOVERNMENT'S POSITION RE: PRESENTENCE REPORT AND SENTENCING FACTORS FOR DEFENDANT ANTHONY DEWAYNE TWYMAN**

service was:

[**X**]  Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[ ]  Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ]  By hand delivery addressed as follows:

[ ]  By facsimile as follows:

[ ]  By messenger as follows:

[ ]  By federal express as follows:

USPO BRANDI FOY
U.S. Probation Office
600 U.S. Courthouse
312 N. Spring Street
Los Angeles, CA 90012

This Certificate is executed on October 28, 2009, California.

I certify under penalty of perjury that the foregoing is true and correct.

  s/Raquel Moran
**RAQUEL MORAN**